PROGRESSIVE INSURANCE COMPANY, Appellee,

v.

HERITAGE INSURANCE COMPANY, Appellant.

[Cite as *Progressive Ins. Co. v. Heritage Ins. Co.* (1996), 113 Ohio App.3d 781.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69264.

Decided Sept. 3, 1996.

*Law Offices of Eugene G. Gillis, Pamela A. Barker* and *Eugene G. Gillis,* for appellee.

*Quandt, Giffels & Buck* and *Joseph Tira,* for appellant.

KARPINSKI, Judge.

Defendant-appellant, Heritage Insurance Company, appeals from the trial court's judgment granting summary judgment in favor of plaintiff-appellee, Progressive Insurance Company. On appeal, Heritage raises one assignment of error, which argues that the Progressive insurance policy, as opposed to the Heritage insurance policy, provides coverage for the accident involving Jason Dawson. For the reasons that follow, we reverse the judgment below that was in favor of Progressive and affirm as to Heritage.

Jason Dawson was employed by Merhaut Florist ·on an as-needed basis. Merhaut Florist was Betty Karafiat and her husband Adolph. Beginning in 1990

with this florist shop, Jason Dawson performed various tasks, for which he was paid $3.50 an hour in 1990 and $4.00 an hour in 1991. In 1990, Dawson worked a total of 161 hours and in 1991 he worked a total of 101.5 hours.

Progressive issued a general auto insurance policy to Chester Dawson, Jason's father. The policy covered the family's 1990 Chevrolet Beretta. Jason Dawson was listed as an additional insured under this policy. This policy was in effect from August 28, 1991 to February 28, 1992.

Heritage issued a commercial auto insurance policy to Merhaut Florist, which covered the business's 1984 Ford Van and the 1985 Mercury Marquis owned by Betty Karafiat. This policy listed zero employees under the section enumerating the nonowned autos covered.

On October 19, 1991, while making a flower delivery using the 1990 Chevrolet Beretta owned by the Dawson family, Jason Dawson was involved in a traffic accident with Donna Metz. Metz suffered physical injuries and damage to her car. She filed a complaint in common pleas court against the driver, Jason Dawson, his mother, Melissa Dawson, and Merhaut Florist.

Progressive provided a defense for the Dawsons, and Heritage provided a defense for Merhaut Florist. Each of these insurance companies maintained that its policy did not provide coverage and that the other policy should cover the damages suffered by the plaintiff, Donna Metz. This first lawsuit was settled with Progressive paying $45,000 for plaintiff's injuries and $1,255 for the damages to plaintiff's auto. Heritage paid $7,500 to plaintiff for her injuries. The parties understood that by paying these damages, neither insurance company was waiving its right to deny coverage. The parties further understood that the determination of which policy should cover the accident would be made in a subsequent declaratory judgment action, which was filed on February 3, 1994.

Finding that the Progressive policy did not provide coverage and that the Heritage policy did, the trial court, therefore, granted summary judgment for Progressive. The trial court ordered Heritage to reimburse Progressive for the $45,000 paid for Metz's personal injuries and the $1,255 for the damage to Metz's auto. Heritage timely appealed, raising one assignment of error, which states as follows:

"The trial court erred by granting summary judgment in favor of the plaintiff, Progressive Insurance Company, and by denying summary judgment in favor of defendant, Heritage Insurance Company."

To determine whether the trial court's judgment is correct, we must interpret the policies issued by Progressive and Heritage. Insurance policies are generally interpreted by applying rules of contract law. *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88. If the language of the

insurance policy is doubtful, uncertain, or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949. However, the general rule of liberal construction cannot be employed to create an ambiguity where there is none. *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 166–67, 10 OBR 497, 499–500, 462 N.E.2d 403, 406–407. If the terms of a policy are clear and unambiguous, the interpretation of the contract is a matter of law. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271.

■ The first question that must be answered is whether the Progressive policy provides coverage to the claim in the case at bar. Progressive argues that the policy specifically excludes this claim. The applicable portion of this policy states as follows:

"Exclusions

"Bodily Injury and Property Damage Liability Insurance Coverage and our duty to defend do not apply to:

"1. Bodily injury. or property damage arising out of the ownership, maintenance or use of a vehicle when used to carry persons or property for a fee, provided that this exclusion does not apply to shared-expense car pools[.]"

Other appellate districts have addressed the enforceability of exclusions for carriage for a fee found in auto insurance policies. In *Nationwide Ins. Co. v. Johnson* (1992), 84 Ohio App.3d 106, 616 N.E.2d 525, the court held that an exclusion for carriage for a fee was ambiguous and thus unenforceable. The court noted that the clause could be interpreted as applying whenever the insured is paid while using the auto or when the insured is paid a specific fee for each time the insured carries goods. The court in *Nationwide Ins. Co. v. Thorley* (Jan. 16, 1991), Summit App. No. 14658, unreported, 1991 WL 6137, applied this same reasoning when it found that such an exclusion was ambiguous and unenforceable. See, also, *Stanton v. Nationwide Mut. Ins. Co.* (1993), 68 Ohio St.3d 111, 623 N.E.2d 1197, which held such an exclusion unenforceable. *Stanton*, however, was decided on the grounds that an exclusion that limits uninsured motorist coverage is unenforceable.

In *Colonial Ins. Co. of California v. Jermann* (1995), 102 Ohio App.3d 384, 657 N.E.2d 336, the court determined that an exclusion for carriage for a fee was inapplicable and held the personal automobile liability·policy covered a personal auto used to deliver pizzas. The exclusion in *Jermann* stated as follows:

" "This coverage does not apply to:

" ' * * *

" 'Bodily injury and property damage arising out of the ownership, mainte-nance or use of a car when used to carry persons or property for a charge.' " (Emphasis deleted.) *Id.* at 386, 657 N.E.2d at 337.

The opinion relied on *Johnson* and found the language of this exclusion ambiguous and susceptible of varying interpretations. The court also cited numerous cases that declined to enforce such an exclusion in a pizza delivery setting. *Progressive Cas. Ins. Co. v. Metcalf* (Minn.App.1993), 501 N.W.2d 690; *RPM Pizza, Inc. v. Automotive Cas. Ins. Co.* (La.1992), 601 So.2d 1366 (exclusion applies where a fee is charged per trip and not where someone is paid compensa-tion for delivering pizzas); *Pizza Hut of Am., Inc. v. W. Gen. Ins. Co.* (1991), 36 Ark.App. 16, 816 S.W.2d 638; *United Services Auto. Assn. v. Couch* (Tenn.App. 1982), 643 S.W.2d 668 (a delivery charge added to the price of the article delivered does not amount to using the vehicle for transportation of property for a fee).

Other jurisdictions have reached the same result as the *Jermann* court. *Richardson v. Ludwig* (Minn.App.1993), 495 N.W.2d 869, at 875 ("By its very nature, pizza delivery is the sort of use of personal automobile that an individual's insurer ought to anticipate."); *First Georgia Ins. Co. v. Goodrum* (1988), 187 Ga.App. 314, 370 S.E.2d 162 (exclusion for carriage for a fee is ambiguous and not enforceable against person paid to drive Salvation Army workers in her car). But see the following cases that enforced such exclusions: *Dhillon v. Gen. Acc. Ins. Co.* (Tex.App.1990), 789 S.W.2d 293 (exclusion was applied to car used to deliver pizza); *Johnson v. Allstate Ins. Co.* (Ala.1987), 505 So.2d 362 (van used to transport children to school for $1 constituted use of the vehicle for a fee).

In the case at bar, this court, following the holdings of *Jermann, Johnson,* and *Thorley,* finds that the exclusion is ambiguous and, therefore, unenforceable. It is not clear in the Progressive policy whether the term "for a fee" refers to using the car while the driver is earning an hourly wage, or whether the term refers to a specific payment for each delivery. There is no evidence that Dawson *drove* for a fee. He was paid wages by the hour, and his pay did not vary with the nature of the work he performed. Whether he delivered flowers or per-formed other tasks, he was paid at the same rate. Because of both the way he was paid and the varying nature of his work, in addition to the ambiguity of the policy language, we find that the Progressive policy provides coverage for Jason Dawson's liability.

We now turn to the question of whether the Heritage policy also provides coverage to this claim. The applicable portions of the Heritage policy state as follows:

"SECTION I–COVERED AUTOS

"A.  Description of Covered Auto Designation Symbols

" * * *

"9 = NONOWNED *AUTOS* ONLY.  Only those autos you do not own, lease, hire, rent or borrow that are used in connection with your business.  This includes *autos* owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

"SECTION II–LIABILITY COVERAGE

"A.  COVERAGE

"We will pay all sums an *insured* legally must pay as damages because of *bodily injury or property damage* to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a **covered** *auto.*

" * * *

"1.  WHO IS AN INSURED

"The following are *insureds:*

"a.  **You for any covered** *auto.*

"b.  Anyone else while using with your permission a covered *auto* you own, hire or borrow except:

" * * *

"(2) Your employee if the covered *auto* is owned by that employee or a member of his or her household."  (Italics *sic;* boldface added.)

■ Under the section "WHO IS AN INSURED," the policy lists "You for any covered auto."  The Supreme Court has held that "You" in a commercial auto liability policy refers to the company listed as the named insured and not to the employees of that company.  *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 212, 519 N.E.2d 1380, 1384.  The "named insured" in the Heritage policy is Merhaut Florist.

■ Although the Heritage policy does not cover the employee Jason Dawson, the policy does cover Merhaut Florist for liability arising out of the use of a covered auto under the policy.  Merhaut's liability derives from the doctrine of *respondeat superior.*  Merhaut, therefore, is vicariously liable for any negligence of its employee, Jason Dawson.

The auto driven by Jason Dawson is a covered auto.  The Heritage policy covers nonowned autos used in the employer's business affairs which the employer does "not own, lease, hire, rent or borrow."  Betty Karafiat stated in her deposition that she did not own, lease, hire, rent or borrow the auto driven by

Jason Dawson. Moreover, she further stated that the auto was used in connection with the florist business.

Therefore, because Merhaut was named as a defendant, and the car driven by its employee was a covered auto, Merhaut is covered to the extent Jason Dawson is found to be negligent. Accordingly, Heritage is responsible for any damages attributed to the claim against Merhaut Florist.

The Twelfth District Court of Appeals came to the same result based upon a different analysis of a policy identical in the relevant parts. In *Auto Owners Ins. Co. v. Motorists Mut. Co.* (Sept. 21, 1992), Butler App. No. CA91–07–121, unreported, 1992 WL 236861, the court held that the employer's auto insurance policy provided liability coverage for damages from an accident involving an employee who was driving a non-company-owned car. The employer's policy specified the following as a covered auto: " '[a]ny "auto" you do not own, lease, hire, rent or borrow used in connection with your garage business.' "

However, the court believed this inclusion was in conflict with the language excluding anyone else except the owner from whom the company hired or borrowed a covered auto. Because of what it viewed as conflicting provisions, the court concluded that the policy provision "most favorable to the insured" must be adopted. *Auto Owners* at 4–5.

The Butler County Court of Appeals, however, ignored the earlier provision that states "You" are insured "for any covered 'auto.' " In our analysis, this provision unequivocally controls, by itself,[1] the case at bar and, through the doctrine of *respondeat superior*, provides coverage to the employer.

Because there has been much confusion as to the applicability of *King* to this case, it might be useful to review the facts of that case. *King* involved a driver who died in the course of his employment while he was driving a car owned by a co-worker. The decedent was not the negligent party. Thus *liability* coverage was not at issue. Rather, the decedent's estate sought additional recovery through the insurance policy of decedent's employer covering *uninsured motorists*. It was the provision defining uninsured/underinsured coverage that was contested.

The relevant section from the *King* policy follows:

" 'Under this coverage, we will pay bodily injury damages that you or your legal representative are legally entitled to recover from the owner or driver of an * * * [underinsured] motor vehicle.

---

1. In other words, the "anyone else" exclusion is no contradiction if the phrase "You for any covered 'auto' " establishes coverage.

" 'Relatives living in your household also have this protection. *Anyone else is protected while occupying:*

" '* * *

" '4. any other motor vehicle while it is being operated by you * * *.' " (Emphasis added.)   35 Ohio St.3d at 212, 519 N.E.2d at 1384.

This policy clearly defined "YOU" as the named insured, that is, the company. What the court in *King* grappled with was the meaning of "your" in the phrase "relatives living in your household." This phrase occurred in a section regarding uninsured/underinsured motorists. It was absurd, the Supreme Court said, to restrict "your" to the company when a company cannot have relatives living in its household. No such absurdity of language occurs in the case at bar. Nor is any tortured reading of the policy necessary to conclude that the Heritage policy in the case at bar covers the employer under Section 1(a) for its liability arising from the use of a "covered auto," which was Jason Dawson's auto.

The judgment is reversed as to the Progressive policy and affirmed as to the Heritage policy.

*Judgment reversed in part*
*and affirmed in part.*

SPELLACY, C.J., and HARPER, J., concur.