JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant the State of Ohio appeals pursuant to Crim.R. 12(J) from the trial court order that granted the motion to suppress evidence filed by defendant-appellee Darryl Jones.
 {¶ 2} The state asserts the trial court's order was improper, contending that the police detective acted reasonably under the circumstances when he stopped Jones and searched his person. This court disagrees. Consequently, the trial court's order is affirmed.
 {¶ 3} Cleveland police Vice Unit detective Jeffrey Follmer testified for the state at the hearing on Jones' motion to suppress evidence. Follmer described the circumstances which led to Jones' arrest as follows.
 {¶ 4} At approximately 8:45 p.m. on the evening of September 24, 2004 Follmer and his partner were in their unmarked police car, traveling together with another two detectives who were in a separate vehicle, assigned to "checking drug complaints throughout the [T]hird [D]istrict area." At about that time, they heard a radio dispatch that directed police officers to disperse a crowd of people in front of a store located at the corner of East 55th Street and Central Avenue.
 {¶ 5} Follmer arrived at the location and immediately "focused on" two men who were "25 to 30 feet" north of the intersection, because as his vehicle swerved "left of center * * * it appeared that one of the males observed us coming toward him and * * * made a furtive movement to the rear of his pants area" as if he were "trying to discard something." Follmer and his partner drove up to the men and "immediately exited their vehicle." Follmer "drew [his] service revolver" and ordered the man, later identified as defendant Darryl Jones, to put out his hands. Jones complied.
 {¶ 6} Follmer performed a pat down search of Jones' clothing to "check for weapons." Follmer stated that due to Jones' earlier "furtive movement," he primarily went for the rear waistband area of Jones' pants, but stopped when he "felt a bulge more towards [Jones'] back buttocks area * * * like in the underwear." Follmer "felt a hard jagged edge" on "a couple [of] hard objects in there, which * * * [he] believe[d] to be crack cocaine * * *."
 {¶ 7} After completing the pat down search of Jones' person, Follmer advised Jones that he knew Jones had crack cocaine "down there," and told him to extract it without using his hands to bring it forth. Once Jones had pulled the item loose from wherever he had placed it, and Follmer had shaken it fully out of Jones' pants, Follmer described what fell out below Jones' pant leg as a plastic bag with three small rocks of crack cocaine tied inside.
 {¶ 8} Jones subsequently was indicted for possession of crack cocaine in an amount less than a gram in violation of R.C. 2925.11. Following his arraignment on the charge, Jones filed a motion to suppress evidence.
 {¶ 9} The trial court held a hearing on Jones' motion, and after listening to Follmer's testimony, Jones' testimony, and receiving the parties' exhibits into evidence, the trial court granted Jones' motion. The trial court determined that neither the stop nor the search was justified.
 {¶ 10} The state appeals the trial court's decision with one assignment of error as follows:
 {¶ 11} "The trial court erred when it granted the defendant's motion to suppress when there was reasonable articulable suspicion that the defendant was engaged in criminal activity and a pat down search of his person did not impermissibly exceed the scope of the search allowed pursuant to Terry v. Ohio (1968), 392 U.S. 1."
 {¶ 12} The state argues that, as required by Terry v. Ohio (1968),392 U.S. 1, Follmer's testimony provided "specific and articulable facts" which reasonably warranted the intrusion into Jones' Fourth Amendment rights. Since, distilled to its essence, the state's argument is an assertion that a person's mere presence in the vicinity of a radio assignment location exposes him to an invasive pat down search of his private areas, this court disagrees.
 {¶ 13} In State v. Williams (1990), 51 Ohio St.3d 58, 61, the Ohio Supreme Court stated that an officer's brief investigative stop of an individual made pursuant to Terry is warranted only when it is "justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." (Emphasis added.) The officer's actions are viewed in light of the totality of the surrounding circumstances. State v. Freeman (1980), 64 Ohio St.2d 21, paragraph one of the syllabus. The trial court is in the best position to resolve factual questions and to evaluate the credibility of the evidence; this court determines whether the facts as presented to the trial court meet the applicable legal standard. State v. Rosa, Cuyahoga App. No. 85247,2005-Ohio-3028.
 {¶ 14} In this case, as presented by the testimony of the witnesses, the totality of the circumstances does not support the actions of Follmer. Follmer indicated on direct examination that he focused on Jones in spite of two facts: Jones and his companion were twenty-five to thirty feet away from the crowd, and neither of the men was acting suspiciously when the detective vehicles arrived in the area.
 {¶ 15} Follmer stated Jones made the "furtive movement" only after he saw the detective vehicles crossing the center line and coming directly at him and his companion. Follmer also contradicted himself during his testimony; he stated Jones movement was "furtive" because he seemed to be discarding something, but later stated he thought Jones may have concealed something in his rear waistband. Additionally, although Follmer described crack cocaine as a crumbly substance, he justified his order to Jones to remove the item he felt during the pat down search on the basis that what he felt was something "jagged" in Jones' underwear. Follmer admitted what he felt he knew was not a weapon.
 {¶ 16} Jones, on the other hand, testified that he and the other man were seated on wooden posts near the bus stop, merely waiting for the bus and conversing about whether it had come lately. He testified the manner of the detectives' arrival startled him into movement, but it was a movement only to stand. He further testified that in spite of his compliance with the order to stop, Follmer placed him in handcuffs before subjecting him to a pat down search that was highly intrusive of his private area.
 {¶ 17} Follmer unwittingly corroborated Jones' version of the incident. Follmer admitted on cross-examination that the radio dispatch requested responding officers merely to disperse the crowd, and that there was no indication that anyone was acting in a threatening manner. Follmer also admitted he had made no arrests in that area for weapons, thus he was not worried for his safety when he stopped Jones. Faced with Follmer's admissions, the trial court indicated it believed Jones' version of the incident over Follmer's. State v. King, Cuyahoga App. No. 84909, 2005-Ohio-1744.
 {¶ 18} The evidence thus presented to the trial court supports a conclusion that under the totality of the circumstances, Follmer lacked an objective manifestation that Jones was engaged in criminal activity which would justify the stop, and, consequently, conducted an unreasonable search of Jones' person. State v. McKinney, Cuyahoga App. No. 83722, 2004-Ohio-4356.
 {¶ 19} Accordingly, the state's assignment of error is overruled.
 {¶ 20} The trial court's order is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J. and Corrigan, J. concur.